```
IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


ALFRED L. MARSHALL, III,        )
                                )
          Plaintiff,            )
                                )
     v.                         )      1:13CV130
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social   )
Security,                       )
                                )
          Defendant.            )
```

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Alfred L. Marshall, III, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Act. (Docket Entry 2.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 12, 16). For the reasons that follow, the Court should enter judgment for Defendant.

### I.  PROCEDURAL HISTORY

Plaintiff filed an application for DIB on June 11, 2009, alleging a disability onset date of November 19, 2005. (Tr. 171-72.) Upon denial of the application initially and upon reconsideration (Tr. 48, 49, 61-64, 68-75), Plaintiff requested and received a hearing de novo before an Administrative Law Judge

("ALJ"), at which Plaintiff and his attorney appeared. (Tr. 26-47.) The ALJ then ruled Plaintiff not disabled under the Act. (Tr. 9-20.) The Appeals Council subsequently denied Plaintiff's request for review (Tr. 1-5), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering this disability determination, the ALJ made the following findings later adopted by Defendant:

> 1. [Plaintiff] last met the insured status requirements of the . . . Act on June 30, 2010.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of November 19, 2005 through his date last insured of June 30, 2010.
>
> 3. Through the date last insured, [Plaintiff] had the following severe impairments: chronic back pain due to degenerative disc disease of the lumbar spine, lumbar spinal stenosis (status post surgery), degenerative disc disease of the cervical spine, and cervical spondylosis.
>
>  . . .
>
> 4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
>  . . .
>
> 5.  . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except that [Plaintiff] would be limited to occasional climbing of stairs, balancing, stooping, bending, crouching, and squatting. [Plaintiff] has the ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently, as well as sit, stand and walk 6 hours in an 8-hour workday. Additionally, [Plaintiff] can use his hands for frequent reaching and handling.
>
>  . . .
>
> 6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

>    . . .
>
>    10. Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.
>
>    . . .
>
>    11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from November 19, 2005, the alleged onset, through June 30, 2010, the date last insured.

(Tr. 14-20 (internal citations to regulations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of our review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [resulting in denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390

-3-

(1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

-4-

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of

---

[1] "The Social Security Act comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. Supplemental Security Income . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179. Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other

jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[3]

### B. Assignments of Error

**1. Mental Consultative Examination**

In his first assignment of error, Plaintiff asserts that the ALJ erred by not ordering a mental consultative examination. (Docket Entry 12 at 2.) Plaintiff contends that "he might be mentally depress[ed]" and questions how the ALJ could "make a decision without [such] things being address[ed]." (Id. at 2-3.) However, Plaintiff's own statements regarding his impairments belie his argument.

An ALJ has discretion in deciding whether to order a consultative examination. See 20 C.F.R. § 404.1519a; Bishop v. Barnhart, 78 F. App'x 265, 268 (4th Cir. 2003). The ALJ must order a consultative examination "when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [the] claim," 20 C.F.R. § 404.1519a(b). Moreover, "[the ALJ] will consider not only existing medical reports, but also <u>the disability interview form containing your allegations as well as other pertinent evidence in your file</u>," 20 C.F.R. § 404.1519a(a) (emphasis added).

---

[3] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

-7-

Case 1:13-cv-00130-JAB-LPA   Document 19   Filed 06/10/15   Page 7 of 14

Here, the record contained sufficient information for the ALJ to determine that Plaintiff's depression constituted a non-severe impairment. (Tr. 14.) No treating physician of record diagnosed Plaintiff with any mental impairment and the record contains no evidence that Plaintiff ever took medication or sought counseling for any mental problems. (Tr. 26-47, 191-98, 209-18, 313-509.) Moreover, on Plaintiff's Disability Report, he claimed disability as a result of a "pinched nerve in [his] back" and "sciatica," and made no mention of any mental problems. (Tr. 192.) Notably, in completing the Psychiatric Review Technique Form, both state agency consultants agreed that Plaintiff's depression constituted a non-severe impairment and did <u>not</u> check the box indicating "[i]nsufficient [e]vidence." (Tr. 260, 274.)

The only evidence in the record that supports Plaintiff's position appears in a physical consultative examination performed by Dr. Cheryl A. Vernon on September 23, 2009, in which Dr. Vernon noted Plaintiff's "flat affect" and "depressed mood" (Tr. 396), assessed Plaintiff with "[d]epression without suicidal ideation" (Tr. 397), and opined that Plaintiff "need[ed] a psychiatric evaluation" (<u>id.</u>). However, as a result of Dr. Vernon's recommendation regarding a psychiatric evaluation, an individual with the North Carolina Disability Determination Services contacted Plaintiff just two weeks later on October 6, 2009, to address whether he suffered from any mental impairments. (Tr. 311.) According to the Report of Contact, Plaintiff indicated that he was "not getting any [treatment] for depression currently and ha[d]

never received mental [treatment]." (Id.) Further, Plaintiff advised that he was "not taking any med[ication]s for depression" and did not "feel depressed." (Id.) Plaintiff additionally reported that he was "able to get out of the house and interact with others," did not "have any problems with crowds," did not "isolate himself," and suffered no "crying spells." (Id.) Those statements find consistency with answers Plaintiff provided on a Function Report, on which he claimed to have "no problem" getting along with others, paying attention, and following instructions, had no "unusual behaviors or fears," and handled stress and changes in routine "pretty good." (Tr. 216-17.)

Most significantly, notwithstanding Dr. Vernon's recommendation that Plaintiff obtain a psychiatric evaluation, neither Plaintiff nor his counsel ever discussed any mental impairments at the hearing before the ALJ, much less requested the ALJ to continue the hearing and order a mental consultative examination. (Tr. 26-47.) Under these circumstances, the ALJ did not err (and certainly did not abuse her discretion) by opting against ordering a mental consultative examination. See Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (holding no error where ALJ failed to order consultative examination before concluding claimant had no mental impairment where claimant did not allege disability due to mental impairment and presented only minimal evidence on issue); Cosom v. Astrue, No. 11–CV–294, 2012 WL 1898921, at * 7 (W.D.N.C. Feb. 23, 2012) (unpublished) (finding "there was no need to arrange for a consultative examination

because the ALJ had all the information he needed to reach a decision.").

**2. New Evidence Before the Appeals Council**

In his second assignment of error, Plaintiff argues that new evidence submitted to the Appeals Council warrants remand for further consideration of his claim. (Docket Entry 12 at 1, 2.) Specifically, Plaintiff claims that Dr. Max W. Cohen, who performed an independent medical examination ("IME") of Plaintiff on November 12, 2010, opined that Plaintiff's orthopedic surgeon should not have performed decompression surgery on Plaintiff's lumbar spine and that Plaintiff's back impairment continued to require surgery. (Id.; see also Tr. 504-509.) Plaintiff maintains that those findings and conclusions demonstrate that he cannot perform light work as the ALJ found. (Id.) Plaintiff's argument lacks merit.

"[T]he Appeals Council is required to consider new and material evidence relating to the period on or before the date of the ALJ decision in deciding whether to grant review." Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 95 (4th Cir. 1991) (emphasis added). "Evidence is new within the meaning of [the Commissioner's regulations] if it is not duplicative or cumulative." Id. at 95-96; see generally Associate Comm'r of Hearings and Appeals, Soc. Sec. Admin., Pub. No. 70-074, Hearings, Appeals, Litig., and Law (LEX) Manual, § I-3-306(A) (1990). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d

at 96 (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)).

Here, the IME in question qualifies as "new," as Dr. Cohen offered opinions about Plaintiff's lumbar spine impairment that differed from Plaintiff's treating orthopedic surgeon, Dr. Jeffrey Beane (compare Tr. 498 (setting forth Dr. Beane's opinion that no "surgical intervention . . . would . . . benefit" Plaintiff and that he instead should pursue eight weeks of "pain management"), with Tr. 506 (documenting Dr. Cohen's opinion that Plaintiff "may be a candidate for further treatment" and that "[p]ain [m]anagement would be contraindicated".)  However, the report lacks materiality because it presents no reasonable possibility of a different outcome.  Dr. Cohen ultimately concluded that Plaintiff "could return to work . . . within the restrictions outlined in his [Functional Capacity Evaluation ("FCE")]."  (Tr. 506.)  The FCE limited Plaintiff to 45 pounds of maximum lifting, 40 pounds of carrying, 30 pounds of frequent lifting, frequent sitting, standing, walking, stair-climbing, crouching, and squatting, and occasional ladder-climbing, bending, stooping, and overhead reaching.  (Tr. 385.)  Thus, Dr. Cohen's IME could not possibly produce a different outcome in Plaintiff's claim, where Dr. Cohen offered less restrictive limitations than the ALJ's RFC.  Notably, Plaintiff neither argues that Dr. Cohen's findings establish that he meets or medically equals any of the Commissioner's listings nor explains how those findings should alter the RFC (let alone how such alteration would impact the ALJ's step five conclusion that

Plaintiff can perform other jobs existing in significant numbers in the national economy). (See Docket Entry 12 at 1-5.)

Accordingly, Plaintiff's new evidence provides no basis for this Court to order further administrative proceedings.

**3. RFC Determination**

Finally, Plaintiff alleges that the ALJ erred by finding Plaintiff retained the RFC to perform a limited range of light work, because employers will not hire him due to his medical restrictions. (Docket Entry 12 at 4.) That argument provides no basis for relief.

The applicable regulation makes clear that the Commissioner need not demonstrate that a particular claimant could actually obtain the jobs identified at step five:

> [The Commissioner] will determine that [a claimant is] not disabled if [his/her] residual functional capacity and vocational abilities make it possible for [him/her] to do work which exists in the national economy, but [he/she remains] unemployed because of-
>
> (1) [His/Her] inability to get work;
>
> (2) Lack of work in [his/her] local area;
>
> (3) The hiring practices of employers;
>
> (4) Technological changes in the industry in which [he/she has] worked;
>
> (5) Cyclical economic conditions;
>
> (6) No job openings for [him/her];
>
> (7) [He/She] would not actually be hired to do work [he/she] could otherwise do; or
>
> (8) [He/She does] not wish to do a particular type of work.

-12-

20 C.F.R. § 404.1566(c) (emphasis added); see also Cole v. Colvin, No. 13CV868, 2014 WL 4060145, at *4 (M.D.N.C. August 14, 2014) (unpublished) (Schroeder, J.) ("At step five, the Commissioner does not have to prove that [the claimant] actually could get hired for the position identified; the Commissioner may find a claimant not disabled even if employers' hiring practices result in the claimant not actually being hired." (citing 20 C.F.R. § 404.1566(c))).[4]

### III. CONCLUSION

The record does not reveal a basis sufficient to grant Plaintiff's request for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, Defendant's motion for judgment on the pleadings (Docket Entry 16) be granted, Plaintiff's motion

---

[4] To the extent that Plaintiff challenges the ALJ's determination of non-disability on the grounds that the Commissioner granted DIB to another passenger in the motor vehicle accident that injured Plaintiff's back (see Docket Entry 12 at 4, 6), such circumstance is immaterial to the Court's duty on judicial review. See 42 U.S.C. § 405(g) (limiting a federal district court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards). Further, Plaintiff's attempt to argue that his lifelong work history warrants his receipt of benefits misses the mark. (See Docket Entry 12 at 1-2, 3, 4-5.) The Commissioner credited Plaintiff for his years of employment, as reflected by the fact that he remained insured for DIB purposes through June 30, 2010. (See Tr. 14.) However, being insured for DIB is but one component of a claim – Plaintiff still must meet his burden of establishing that he is disabled under the regulations. See 20 C.F.R. § 404.1520 (describing the SEP). Finally, Plaintiff requests that a jury review his case. (See Docket Entry 12 at 2, 3.) However, the Act does not entitle Plaintiff to a jury trial. See 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing." (emphasis added), § 405(h) ("No findings of fact or decision of the Commissioner . . . shall be reviewed by any person, tribunal, or governmental agency except as herein provided.").

for judgment on the pleadings (Docket Entry 12) be denied, and this action be dismissed with prejudice.

<pre>
                                  /s/ L. Patrick Auld
                                  L. Patrick Auld
                            United States Magistrate Judge
</pre>

June 10, 2015